```
               UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT

GENERAL ELECTRIC CAPITAL             :
CORPORATION,
                                     :
     Plaintiff,
                                     :
     vs.                                    No. 3:04CV1161(WWE)(WIG)
                                     :
JACK L. HOPPES and
SHARON HOPPES,                       :

     Defendants.                     :
_____/
```

### **RECOMMENDED RULING ON DAMAGES**

This matter was referred to the Undersigned for a hearing on damages. Although this should have been a very straight-forward matter, several issues have arisen that warrant discussion.

As discussed in the earlier rulings of Judge Eginton, GE Capital filed this suit to collect on a promissory note between GE Capital and Four Star Charter, Inc., that was individually guaranteed by the defendants, Jack and Sharon Hoppes. Under the terms of the individual guaranties, each defendant guaranteed the "the due regular and punctual payment of any sum or sums of money which [Four Star] may owe to [GE Capital] now or at any time hereafter, ... whether it represents principal, interest, ... late charges, ... an accelerated balance, ... a balance reduced by partial payment, ... that [Four Star] may owe." They further guaranteed "to pay on demand all losses, costs, attorneys' fees and expenses" which GE Capital suffered by reason of Four Star's default or the default of the guarantors...."

On October 4, 2004, a default was entered as to both defendants.  Judge Eginton, however, reserved ruling on plaintiff's motion for a default judgment and instructed plaintiff to file an affidavit with an itemized calculation of damages requested.  (Ruling of Dec. 16, 2004.)  In response, plaintiff filed three affidavits, one addressed to the calculation of damages and the other two addressed to the matter of attorneys' fees and costs.  When Judge Eginton was still unable to discern the basis for the damages claimed, he referred this matter to the Undersigned for a damages hearing.  (Ruling of March 2, 2005.)

1.  Unpaid Principal and Accrued Interest

At the hearing, plaintiff's counsel and the corporate witness maintained that the "principal" due under the promissory note was the sum of all unpaid periodic installments due for the remaining term of the note.  This interpretation ignored the clear language of the note itself and the well-recognized definition of "principal."  The note states that the loan was for the "principal sum" of $1,070,548.99, to be repaid in "consecutive monthly installments of principal _and interest_."  (Emphasis added).  Upon default, "the entire _principal sum remaining unpaid_, together with all _accrued_ interest thereon and any other sum payable under this Note or Security Agreement... shall immediately become due and payable...." (Emphasis added).

Since six monthly installments of principal and interest had been paid before the loan went into default, "the entire principal sum remaining unpaid" should be calculated by subtracting from the original principal sum the amount of principal that had already been paid.  Generally, an amortization schedule is required to ascertain the portion of each monthly installment attributable to principal.  Furthermore, contrary to the position taken by the plaintiff, only interest that had "accrued" was due and payable upon default.

When counsel and his client were unable to provide this information at the hearing, the Court instructed them to file an itemized accounting of damages with the Court within seven days.  Counsel then filed the supplemental affidavit of Josh Pandolfi with an amortization schedule,[1] showing that the principal balance remaining after six payments was $1,017,182.20.  The accrued interest at the default rate of eighteen percent (18%)[2] from September 10, 2003 through April 5, 2005, was $290,049.64, calculated at a rate of $506.19 per day.  These figures appear

---

[1]  Had this affidavit been filed with plaintiff's original motion for default judgment, a damages hearing would not have been necessary.

[2]  According to the terms of the Promissory Note, upon default, the entire principal sum remaining unpaid, plus accrued interest thereon and any other sum payable under the Note became immediately due and payable with interest thereon at the lesser of eighteen percent (18%) per annum or the highest rate not prohibited by applicable law from the date of such accelerated maturity until paid (both before and after judgment).

correct and the Court recommends awarding plaintiff principal and interest in these amounts.

2.  Late Charges

Additionally, plaintiff sought late charges of $14,675.03. The note provides for a late payment charge of five percent (5%) of the amount of any installment that is not received within ten (10) days after its due date.  At the hearing the Court advised plaintiff that, under Connecticut law, which governs the note in question, late charges could not be collected once the note was accelerated and placed in default.  See FDIC v. Napert-Boyer Partnership, 40 Conn. App. 434, 443 (1996) (holding that a plaintiff may not recover late charges once the note has been accelerated and demand for payment has been made on the defendants); FDIC v. M.F.P. Realty Assocs., 870 F. Supp. 451, 455 (D. Conn. 1994) ("The reason is that, while a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer 'due' after the lender has accelerated the note and made demand upon the borrower.").  Plaintiff has now revised its request and seeks late charges for a period of only twelve (12) months based upon the fact that Four Star, the maker of the note, was late in making payments for every month from the inception of the note (February 28, 2003), through March 2004, the date plaintiff

placed the note in default.[3]  Thus, it has requested late charges of $9,268.44 (5% X $15,447.43 X 12 = $9,268.44).

Defendants, as guarantors, agreed to pay any sums of money that Four Star owed to plaintiff, including late charges.  Thus, defendants are liable for these late charges to the same extent that Four Star would have been liable.  Based on the sworn affidavit of Mr. Pandolfi that Four Star was more than ten days late in making payments from February 28, 2003, through March 2004, the Court recommends awarding plaintiff late fees in the amount now requested, $9,268.44.

3. Attorneys' Fees and Costs

Next, plaintiff seeks an award of attorneys' fees in the amount of $20,186.51.[4]  In support thereof, plaintiff has submitted the affidavits of Darren Pascarella with the law firm of Reed Smith LLP in New York City, and Melissa Zelen Meier, with the law firm of Ivey, Barnum & O'Mara, LLC, which served as local counsel on this matter.  Time records of Reed Smith show total fees for legal services of $14,980.60 through January 27, 2005, and the time records of Ivey, Barnum show total fees and disbursements of $5,907.81, through December 29, 2004.

The promissory note provides that Four Star, as the Maker,

---

[3] The better practice would have been to provide the Court with a schedule of payments made by Four Star showing the amount of each payment and the date that each payment was made.

[4] The total of the fees requested is actually $20,816.41.

agrees "to pay (if permitted by law) all expenses incurred in collection, including [GE Capital's] actual attorneys' fees." (Emphasis added).  Additionally, the note provides that Four Star agrees that "fees not in excess of twenty percent (20%) of the amount then due shall be deemed reasonable."

Although the note provides for the award of "actual attorneys' fees," the note also implicitly recognizes that some showing of reasonableness is required under Connecticut law.  See Crest Plumbing & Heating Co. v. DiLoreto, 12 Conn. App. 468, 479 (1987) (construing the term "attorney's fees" as "reasonable attorney's fees" because the term "reasonable" is implied by law even when it is absent from the contractual provision); but see Estate of Cargas v. Bednarsh, No. 239421, 2003 WL 21716463, at *1 (Mich. App. July 24, 2003)(unpublished decision)(holding that when a contract provides for the recovery of "actual attorney's fees," the court must enforce the contract language as written without considering the reasonableness of the fees).

At the hearing, the Undersigned advised counsel that he did not intend to award fees for time unnecessarily spent on proving damages.  Additionally, the Court has considerable difficulty with the fee affidavit of Attorney Neier, which fails to provide any information concerning the hourly rates charged or who

6

performed the work,[5] and which also includes excessive and unreasonable amounts of time for certain services (e.g., 1.5 hours for a pro hac vice application, 1.0 hours for a civil cover sheet, nearly 11.0 hours in filing a motion for default, 0.6 hours each time the docket was checked for the status of the default, 1.0 hours exchanging e-mails regarding docket status). The Undersigned recommends that for service provided by Ivey Barnum fees in the amount of $750 should be awarded, which is a reasonable amount for local counsel in a case of this nature, plus disbursements of $203.00.[6]

With respect to the fee affidavit of Attorney Pascarella, a large percentage of the time spent on this matter involved efforts to collect on the note in addition to the filing of the instant lawsuit.  These fees are nevertheless recoverable since they were incurred in an effort to collect the debt.  The fee affidavit only covers time through January 27, 2005, with relatively little time spent on matters relating to damages. The Undersigned recommends that the requested fees of $14,908.60 be reduced by $500, in light of the time unnecessarily spent on

---

[5] The bill simply lists the initials of "JTK," "STL," "JY," and "MZN," the last presumably belonging to Attorney Neier.  The Court has no way of ascertaining whether these individuals are attorneys or paralegals, or their level of experience, or their hourly rates.  The bill only lists hours charged, then total hours, and a total fee.

[6] The remaining disbursements are for Westlaw research.  No explanation for this research has been provided.

the motion for default judgment.  Thus, the Court recommends an award of attorneys' fees and costs in the amount of $15,361.60.

### 4. Post-Judgment Interest

Last, plaintiff seeks post-judgment interest at the default rate of eighteen percent (18%).  Generally, in federal cases, the award of post-judgment interest on a money judgment is governed by 28 U.S.C. § 1961(a).  However, that statute does not prohibit the parties from contracting for a different interest rate.  In re Connaught Properties, Inc., 176 B.R. 687, 684 (Bankr. D. Conn. 1995).  Here, the promissory note expressly states that the default rate of interest shall apply both before and after judgment.  This agreement is binding on defendants, who guaranteed the payment of any and all sums, including interest.

### Conclusion

In conclusion, the Court recommends the entry of a default judgment in the total amount of $1,331,861.88 (consisting of unpaid principal of $1,017,182.20, accrued interest of $290,049.64 through April 5, 2005, late fees of $9,268.44, and attorneys' fees and costs of $15,361.60), plus additional interest at the rate of $506.19 per day from April 6, 2005, until the entry of judgment.  Additionally, interest shall continue to accrue at the rate of 18% per annum until the judgment is paid in full.

Any objections to this recommended ruling must be filed with

the Clerk of the Court within ten (10) days of the receipt of this order.  Failure to object within ten (10) days may preclude appellate review.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; D. Conn. L. Civ. R. 72 for Magistrate Judges; FDIC v. Hillcrest Assocs., 66 F.3d 566, 569 (2d Cir. 1995).

    SO ORDERED, this __29th__ day of April, 2005, at Bridgeport, Connecticut.

                                              */s/ William I. Garfinkel*
                                              WILLIAM I. GARFINKEL,
                                              United States Magistrate Judge